UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NATALIE BEYER,

       Plaintiff,

       -against-

THE COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, POLICE COMMISSIONER
WILLIAM WILLET, in his official and individual capacity,
CHIEF HERBERT FAUST, in his official and individual
capacity, DEPUTY INSPECTOR SCOTT WANLASS,
in his official and individual capacity, and DETECTIVE
LIEUTENANT JAMES GRANELLE, in his official and
individual capacity,

       Defendants.
-------------------------------------------------------------------X

**RECEIVED**
U.S. DISTRICT COURT E.D.N.Y.
CLERK'S OFFICE
LONG ISLAND COURTHOUSE

★ JUN 06 2002 ★
ENTERED
★━━━━━★

CV-02 3310

**COMPLAINT**

Jury Trial Demanded

PLATT, J.
LINDSAY, M.

Plaintiff, NATALIE BEYER, by her attorneys, LEEDS, MORELLI & BROWN, P.C., complaining of the defendants herein, alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

**JURISDICTION AND VENUE**

1.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, et seq., and 42 U.S.C. §§ 1983, 1985, & 1986 to redress the discrimination against the plaintiff in the terms, conditions and privileges of employment, as well as the deprivation by the defendants, under the policies, ordinances, custom and usage of all rights, privileges and immunities secured to plaintiff by the First and Fourteenth Amendments to the

Constitution of the United States and all of the laws and statutes thereunder. This action also arises under the New York Executive Law Section 290, et seq.; the New York State Constitution; and any other causes of action which can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked under 28 U.S.C. Section 1331, the doctrine of pendant jurisdiction and the aforementioned statutory and constitutional provisions.

3. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was duly filed with the EEOC and a Right to Sue Letter was issued on March 25, 2002 (See Exhibit A attached hereto). This action was properly instituted within 90 days of said issuance.

4. Venue is proper pursuant to 28 U.S.C. Section 1391.

## PARTIES

5. At all times hereinafter mentioned, the Plaintiff was and still is a resident of the County of Suffolk, State of New York.

6. At all times hereinafter mentioned, the Defendant, The County of Nassau, was and still is a duly incorporated municipal corporation of the State of New York with its principal place of business located at 1 West Street, Mineola, New York 11501.

7. At all times hereinafter mentioned, Defendant, Nassau County Police Department ("NCPD") is a public employer with a principal place of business at 1490 Franklin Avenue, Mineola, New York 11501.

8. At all times hereinafter mentioned, Defendant William Willet ("Willet"), was and still is employed by the NCPD, as the Police Commissioner of the NCPD, with a principal place of business at 1490 Franklin Avenue, Mineola, New York 11501.

9. Defendant Willet, was and is responsible for the NCPD's maintenance and operation, including, but not limited to, the hiring, firing, granting of promotions and discipline of employees and all other employment related issues. Additionally, Willet is a policymaker for the NCPD, charged with the responsibility of ensuring that employees are not subjected to harassment or discriminatory treatment. He is also partially responsible for properly training and supervising employees with respect to harassment, discrimination and retaliation. Defendant Willet engaged in the discriminatory and retaliatory conduct as set forth below.

10. At all times hereinafter mentioned, Defendant Herbert Faust ("Faust"), was and still is employed by the NCPD, as Chief of Detectives of the NCPD, with a principal place of business at 1490 Franklin Avenue, Mineola, New York 11501.

11. Defendant Faust, was and is responsible for the NCPD's maintenance and

operation, including, but not limited to, the hiring, firing, granting of promotions and discipline of employees and all other employment related issues. Additionally, Faust is a policymaker for the NCPD, charged with the responsibility of ensuring that employees are not subjected to harassment or discriminatory treatment. He is also partially responsible for properly training and supervising employees with respect to harassment, discrimination and retaliation. Defendant Faust engaged in the discriminatory and retaliatory conduct as set forth below.

12. At all times hereinafter mentioned, Defendant Scott Wanlass ("Wanlass"), was and still is employed by the NCPD, as a Deputy Inspector of the NCPD, with a principal place of business at 1490 Franklin Avenue, Mineola, New York 11501.

13. Defendant Wanlass, was and is responsible for the NCPD's maintenance and operation, including, but not limited to, the hiring, firing, granting of promotions and discipline of employees and all other employment related issues. Additionally, Wanlass is a policymaker for the NCPD, charged with the responsibility of ensuring that employees are not subjected to harassment or discriminatory treatment. He is also partially responsible for properly training and supervising employees with respect to harassment, discrimination and retaliation. Defendant Wanlass engaged in the discriminatory and retaliatory conduct as set forth below.

14. At all times hereinafter mentioned, Defendant James Granelle ("Granelle"), was and still is employed by the NCPD, as a Detective Lieutenant of the NCPD, with a principal

place of business at 1490 Franklin Avenue, Mineola, New York 11501.

15. Defendant Granelle, was and is responsible for the NCPD's maintenance and operation, including, but not limited to, the hiring, firing, granting of promotions and discipline of employees and all other employment related issues. Additionally, Granelle is a policymaker for the NCPD, charged with the responsibility of ensuring that employees are not subjected to harassment or discriminatory treatment. He is also partially responsible for properly training and supervising employees with respect to harassment, discrimination and retaliation. Defendant Granelle engaged in the discriminatory and retaliatory conduct as set forth below.

## FACTS

16. The plaintiff, Natalie Beyer ("Beyer"), a female, was hired by the Nassau County Police Department ("NCPD") in January 1987, as a Police Officer. She was assigned to the 7th Precinct in Seaford, New York.

17. In 1988, Beyer's assignment was changed to the Scientific Investigation Bureau, the Serology Section, located at the NCPD Headquarters in Mineola, New York. In 1990 Beyer was given the designation of Detective.

18. Throughout her tenure with the NCPD, Beyer has performed her duties in a satisfactory manner.

## Failure to Promote

19.     Beyer has been discriminated against on the basis of her gender. Specifically, she has been denied assignment changes on the basis of her gender. In 1999, Beyer applied for a change of assignment to the Latent Fingerprint Section, Technical Services Bureau ("LFS").

20.     The LFS position is a prestigious and a highly desirable position. Although a transfer to LFS would have been a lateral transfer for Beyer, it would have offered her advanced training and experience in forensic science. The LFS has state-of-the-art computer systems and uses the most advance techniques in crime scene investigations. A transfer to LFS would have also presented more opportunities for her to advance her career within the NCPD.

21.     In 1999, the LFS position was filled by Chris Armstrong ("Armstrong"), a male police officer, rather than Beyer. Armstrong was previously assigned to the Records Bureau and upon information and belief did not have prior latent fingerprint experience.

22.     Beyer was qualified for the position because she had a strong interest in latent fingerprint science and had prior experience in latent fingerprint analysis when she worked in the Scientific Investigation Bureau. Moreover, she has a B.S. in Chemistry, a Masters Degree in Forensic Science, has taken training courses in crime scene investigation, latent fingerprint development, and has testified as an expert witness in serology.

23.     In November 2000, Beyer again applied for a change of assignment to the Latent

Fingerprint Section.

24. After the interview, Beyer asked Detective Lieutenant James Granelle where she stood in consideration for the position. Granelle responded by saying, "you are way on the bottom of the list ... qualifications aren't everything ... we need to take care of the 'boys' and the 'guys' who have done the right thing for the job over the last ten years."

25. Upon information and belief, defendant Granelle and Faust denied Beyer the LFS position on the basis of her gender.

26. Upon information and belief, Granelle has been accused by another female officer of condoning sexual harassment and discrimination by male police officers and failing to act in response to that female officer's complaints of discrimination and harassment.

27. Furthermore, upon information and belief, Faust was aware that Granelle had been accused of condoning sexual harassment and gender discrimination, yet Faust failed to remedy the matter because he permitted Granelle's decision not to promote Beyer on the basis of her gender.

28. Subsequent to Granelle's statements to Beyer, upon information and belief, Granelle and Faust made the decision to deny her the transfer request. Upon information and belief, rather than Beyer, Granelle and Faust promoted four (4) male Police Officers and assigned

those officers to the LFS position.

29. Officer Paul Bigilin ("Biglin") was assigned to the LFS position. Biglin had less time with the NCPD than Beyer and his prior working experience was in the Community Projects Bureau, which upon information and belief did not involve working with latent fingerprint science.

30. Officer Anthony Clarke ("Clarke") was also assigned to the LFS position. Upon information and belief, Clarke did not have any latent fingerprint science experience and thus not qualified for the position.

31. Officer Randy Hall ("Hall") was also assigned to the LFS position. Hall was promoted from the Information Systems Bureau, where his duties included troubleshooting computer problems. Upon information and belief, Hall did not have prior latent fingerprint science experience and thus was not qualified for the position.

32. Officer Thomas Iervese ("Iervese") was also assigned to the LFS position. Upon information and belief, prior to the LFS position Iervese performed clerical functions, and has less seniority than Beyer.

33. In December 2000, Beyer complained, in writing, to defendant Willet, the Police Commissioner, that her inability to receive a change of assignment was discriminatory and based

upon her gender.

34. An investigation was performed, however, the investigation was incomplete and biased. The investigating officer, Inspector Epp ("Epp"), directed Beyer's supervisors to write performance evaluations of Beyer, even though writing evaluations violated the terms of the Collective Bargaining Agreement.

35. Epp told Beyer that some of her supervisors provided negative evaluations. However, throughout her career with the NCPD, Beyer has repeatedly received positive feedback on her work performance and was not aware of any negative performance evaluations.

36. On May 29, 2001, Beyer complained again, in writing, to defendant Willet about the inadequacies of the investigation, the discriminatory transfer denials, and that she has been treated differently because she is a woman.

37. However, her complaint was ignored. To date, Beyer has not received a response to her May 2001 letter, nor has she been informed that an investigation into her complaint has been initiated. Moreover, Beyer continues to be denied a promotion to the LFS.

### Failure to Provide Training

38. Beyer has also been denied the opportunity to attend training courses on the basis of her gender. Between 1988 and 1995, Beyer was the only female officer assigned to the Serology Unit. In or about 1995, another female officer was assigned to the unit.

39. Since in or about 1993, Beyer has been the only female in the Serology Unit who requested to attend training courses in forensics and serology. Each and every time she applied, her requests were denied by defendant Wanlass, however, he permitted her similarly situated male counterparts to attend the training seminars.

## CLAIMS FOR RELIEF

40. The plaintiff repeats and realleges each allegation set forth above with the same force and effect as if more fully set forth herein.

41. The plaintiff was subjected to severe, pervasive, and unwelcomed harassment based on her sex.

42. The plaintiff was denied transfers, promotions and training on the basis of her gender, and was also subjected to unwarranted gender based comments made by her supervisors.

43. The harassment had the effect of unreasonably interfering with her job performance and created an intimidating hostile and offensive work environment.

44. Defendants had a policy and practice of harassing the plaintiff in violation of her federally protected rights to equal protection under the Fourteenth Amendment to the United States Constitution.

45. Defendants Willet, Faust, Wanlass, and Granelle, are a high-level supervisors or policymakers for the NCPD, and their conduct towards the plaintiff constitutes or represents the official practice of that entity. Defendants did not treat other similarly situated male employees in a similar fashion to the manner in which they treated the plaintiff.

46. Defendants had actual or constructive notice of the fact that the plaintiff complained about discrimination and were deliberately indifferent to it occurrence. Such notice adequately appraised the defendants of the fact that she was being denied promotions and transfers on the basis of her gender, and that she was being treated different on the basis of her gender.

47. Upon information and belief, defendants violated the plaintiff's civil rights by encouraging, importuning and/or failing to prevent discrimination on the basis of the plaintiff's gender.

48. The defendants' high-level policymaking officials and supervisors knew of or had notice of the discrimination and the plaintiff's complaints of discrimination and were deliberately indifferent to its occurrence. The defendants, by failing to properly investigate her complaints,

tacitly condoned this behavior.

49. The defendants maintained a policy and practice of failing to properly train and supervise their employees with respect to discrimination, harassment and/or retaliation in violation of the plaintiff's federally protected rights to equal protection. The fact that this failure to promote and train the plaintiff and/or retaliate against the plaintiff for complaining of discrimination occurred in such a persistent manner to demonstrate that the defendants failed to properly supervise and train its employees. Moreover, the defendants improperly trained those supervisors or employees responsible for the investigation and response to complaints of discrimination. To the extent that the defendants purportedly did investigate the plaintiff's complaints, such investigations were conducted in furtherance of the defendants' interests, were unduly biased and protective of the NCPD and failed to comport with standard investigation techniques and practices.

50. The fact that this disparate treatment occurred in such a persistent manner demonstrates that the NCPD failed to properly supervise and train its employees.

51. The defendants failed to promulgate effective discrimination procedures, including procedures for the processing of discrimination complaints, the prevention of incidents of discrimination or the investigation of discrimination complaints and the protection of complainants against incidents of retaliation.

52. The defendants' aforementioned official and unofficial unlawful customs, policies or practices were the moving force behind the failure to promote and train the plaintiff and the retaliation that injured the plaintiff.

53. It was obvious that the NCPD needed to take preventative or corrective measures with respect to the disparate treatment the plaintiff was subjected to and her complaints of discrimination, and the failure to do so violated plaintiff's protected civil rights.

54. Moreover, each of the named individual defendants, all of whom are high-level supervisors or policymakers for the NCPD, deprived the plaintiff of her federally protected rights while acting under the color of state law.

55. Defendants' actions are not supported by a sufficiently compelling state interest to justify such disparity in treatment of similarly situated individuals, nor is the disparity closely tailored to effectuate any state interest which may exist. In the alternative, there is no legitimate state interest in such disparity in treatment, nor is there any rational relationship between any legitimate state purpose and the means chosen to achieve this purpose.

56. Through the aforementioned practices, defendants have violated the plaintiff's federal constitutional right to Equal Protection under the laws as guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 by discriminating against her because of her gender and/or because she complained of such discrimination.

57.     Willet, Faust, Wanlass, Granelle and others were involved in a conspiracy with each other and other members of the NCPD for the purpose of discriminating the plaintiff because she is a woman and complained of discrimination. They also aided and abetted each other in their acts of harassment and/or their failure to prevent the acts of discrimination.

58.     The conspiracy was motivated, in part by a disliking or discriminatory attitude towards women and complaints of discrimination.

59.     By reason of Defendants' violation of plaintiff's rights, plaintiff has suffered a loss of monetary benefits associated with her employment in addition to suffering physical, emotional and other damages.

WHEREFORE, plaintiff demands judgment against defendants for all compensatory and punitive damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Carle Place, New York
      May 22, 2002

                              LEEDS, MORELLI & BROWN, PC
                              *Attorneys for Plaintiff*
                              One Old Country Road
                              Suite 347
                              Carle Place, New York 11514

                              BY: _____
                                      DAVID NEVINS
                                      DN-4742