UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
NATALIE BEYER,　　　　　　　　　　　　:
　　　　　　　　　　Plaintiff,　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　**ORDER ADOPTING**
　　　　　　　　　　　　　　　　　　　　:　　**REPORT AND RECOMMENDATION**
　　　　　　　　　　　　　　　　　　　　:　　02-CV-3310 (DLI) (ARL)
　　　　　　　　-against-　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
THE COUNTY OF NASSAU, NASSAU　　　　 :
COUNTY POLICE DEPARTMENT,　　　　　　:
POLICE COMMISSIONER WILLIAM　　　　　:
WILLET, in his official and individual　　:
capacity, DEPUTY INSPECTOR SCOTT　　　:
WANLASS, in his official and individual　:
capacity, and DETECTIVE LIEUTENANT　 :
 JAMES GRANELLE, in his official and　　:
 individual capacity,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants.　　　　　:
---------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

　　　　Plaintiff Natalie Beyer ("Beyer") brought suit against the County of Nassau ("County"), the Nassau County Police Department, ("Police Department") and several individual officials and employees of the Police Department alleging that defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§1983, 1985, 1986 and the New York State Human Rights Law ("N.Y.S.H.R.L.") by denying plaintiff's request to be transferred from the Police Department's Serology Section ("Serology") to the Police Department's Latent Fingerprint Section ("LFS") and denying requests to participate in certain training in serology and other forensic methods. Defendants moved for summary judgment on all of the claims brought against them pursuant to Fed. F. Civ. P. 56. By order dated April 6, 2006 this court referred the motion to U.S. Magistrate Judge ("MJ") Arlene R. Lindsay for preparation of a Report and Recommendation ("R&R"). MJ Lindsay issued a R&R on August 3, 2006 and recommended that this court grant defendants' motion for

summary judgment except as to certain §1983 and N.Y.S.H.R.L. claims, which MJ Lindsay did not consider because they were not briefed by the parties. Both plaintiff and defendants filed timely objections to the R&R on August 17, 2006. Plaintiff filed a letter response to defendants' objections on August 18, 2006 and defendants filed a response to the plaintiff's objections on August 31, 2006. For a number of reasons, the plaintiff objects to MJ Lindsay's determination that there was no adverse employment action taken by defendants. The defendants object to the R&R to the extent that MJ Lindsay did not dismiss plaintiff's §1983 and N.Y.S.H.R.L. claims. For the reasons set forth below, the court adopts the R&R but modifies it to the extent that the court has considered and sustained defendants' objections.

## Discussion

When reviewing a magistrate judge's report, a district judge must make a *de novo* determination with respect to those parts of the R&R to which any party objects. The district court may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b); *See also United States v. Raddatz,* 447 U.S. 667, 673-76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). As she is entitled to do pursuant to Fed. R. Civ. P. 72(b), plaintiff included an additional affidavit in support of her objections to MJ Lindsay's R&R. The Court has reviewed Beyer's addtional affidavit and has determined that it fails to raise any issue of material fact which would defeat defendant's motion for summary judgement. The court incorporates herein the summary of facts as stated in MJ Lindsay's R&R, but references Beyer's affidavit in support of her objections to MJ Lindsay's R&R as necessary.

1. <u>Denial of Beyer's Transfer Request</u>

Under the framework set out by the Supreme Court in *McDonnell Douglas Corp. v Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the plaintiff carries the initial burden of proving a prima facie case of discrimination. *Id.* To establish a prima facie case, the plaintiff must show that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Abdu Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). The parties agree that plaintiff is a member of a protected class and that she is qualified for the job. The salient issue in this motion is whether the denial of the plaintiff's transfer requests amounted to an adverse employment action. MJ Lindsay determined that Plaintiff has failed to raise any genuine issues of material fact that would lead a reasonable jury to find that the denial of the transfer requests was an adverse employment action. The court agrees with MJ Lindsay's determination.

When evaluating a motion for summary judgement, the court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In drawing inferences in favor of the nonmoving party, "the court is not entitled to weigh the evidence." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). Nevertheless, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support

a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249-50. "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (internal citations omitted).

Plaintiff objects to MJ Lindsay's determination that there is no genuine issue of material fact justifying a finding that the denial of the transfer requests was an adverse employment action. Plaintiff claims that the denial of the transfers was adverse because (1) Serology and LFS involve materially different job responsibilities; (2) LFS was a "burgeoning elite department" while Serology was being outsourced; and (3) LFS was more suited to Beyer's skills. Plaintiff's Memorandum in Support of Her Objections to Magistrate Report and Recommendation ("Plaintiff's Memo") 12. The court is aware that "there is no bright line rule for determining whether the challenged employment action reaches the level of adverse. Courts must therefore pore over each case to make this determination." *Joseph v. Thompson*, No. Civ. A95-CV-4898, 2005 WL 3626778, at *6 (E.D.N.Y. March 23, 2005) (internal quotations omitted). Accordingly, the court has "pored" over the case and conducted a *de novo* review of the record and finds on the essentially undisputed facts that the denial of the transfer requests was not an adverse employment action in contravention of Title VII.

MJ Lindsay concluded, and the parties agree, that the work preformed by police officers in Serology is materially different than LFS. R&R 8. The record is replete with evidence that the two units are materially different. *See* Affidavit of Natalie Beyer in Opposition to Defendants' Motion for Summary Judgement ("Beyer Aff.") ¶¶ 5,7, Affidavit of Paul A. Tully ("Tully Aff.") ¶¶ 7-9. MJ Lindsay, however, recommended that summary judgement be granted because she concluded that a transfer to a another job, even one with materially different job responsibilities (or the denial of

4

a transfer), without more, is not an adverse employment action. Rather, MJ Lindsay found that in order to be actionable, a transfer (or the denial of the transfer) must create a "materially significant disadvantage." R&R 7. Plaintiff objects to MJ Lindsay's determination and contends that "the essential question to be asked when evaluating whether an adverse action occurred is whether there was any <u>material</u> difference in job 'terms, conditions or privileges.'" Plaintiff's Memo 8.

The law in this circuit is clear. An employment action is only discriminatory when it is both material and is to the disadvantage of the aggrieved employee. In *Williams v. R.H. Donnelley Corp.,* 368 F.3d 123 (2d Cir. 2004), the Second Circuit held that "an employer's denial of a transfer request that would have resulted in a reduction in pay and the employee's demotion within the organization, without more, does not constitute an adverse employment action." *Id.* at 128. The plaintiff in *Williams* failed to establish a prima facie case of discrimination because the denial of the transfer request was not to her disadvantage. It is important to note that the denial of the transfer, although not to the plaintiff's disadvantage, might have been material because it precipitated into the plaintiff resigning. *Id.* at 125; *accord Minor v. Centocor, Inc.*, 457 F.3d 632 (7th Cir. 2006)(plaintiff, who was required to work at least 25% longer hours for the same income, suffered an adverse employment action). In *Galabya v. New York City Bd. of Ed.,* 202 F.3d 636 (2nd Cir. 2000), the alleged adverse employment action was a transfer from a special education keyboarding class to a mainstream keyboarding class. Plaintiff argues that *Galabya* stands for the proposition that "a plaintiff who provides a record establishing 'completely and materially different' job duties has developed enough of a record to permit the Circuit to find an adverse action." Plaintiff's Memo 10. However, a review of *Galabya* does not support plaintiff's reading. The plaintiff in *Galabya* failed to demonstrate an adverse employment action because he did not produce evidence that "the transfer

5

was to an assignment that was materially less prestigious, materially less suited to his skills and experience or materially less conducive to career advancement." *Id.* at 641. In other words, the plaintiff could not maintain a claim of discrimination because he failed to show that the employment action was to his disadvantage. *See also Pimentel v. City of New York*, No. 00-CV-326, 2002 WL 977535, at *4 (S.D.N.Y., May 14, 2002)("[d]enial of 'requested transfers [that] did not involve an upgrade in position or increases in wages' is not an adverse employment action") *quoting Gonzalez v. Federal Express Co.,* 95-CV-3529, 1998 WL 289722, at *4 (S.D.N.Y. June 3, 1998). Accordingly, the court agrees with MJ Lindsay's conclusion that a Title VII plaintiff is required to demonstrate that the employment action created a "materially significant disadvantage." Simply being denied a transfer to a materially different position, which is the claimed action in this case, does not suffice.

Plaintiff further argues that the denial of the transfer is an adverse employment action because LFS was more prestigious and more important to the Police Department than Serology. Plaintiff, however, fails to present any evidence of the alleged superiority of LFS. Rather, plaintiff opines that "[S]erology was becoming less significant in the Department" and LFS was "burgeoning in value to the department." Beyer Aff. ¶¶9, 14. Beyer goes on to explain that the reason why she had such a high regard for LFS and such a low regard for Serology was (1) that throughout the 1990s Serology was outsourcing some of its work, (Beyer Aff. ¶9); (2) LFS was provided "state of the art computer systems" at some unspecified time (Beyer Aff ¶14); and finally (3) that there were "rumors and discussions about the possible closure" of Serology. Affidavit of Natalie Beyer in Support of Her Objections to Magistrate Report and Recommendation ("Aff. in Support") ¶ 3. None of this is

refuted by defendants.[1] There is no doubt that Beyer had a strong desire to be transferred out of Serology, and that she coveted a transfer to LFS, which was denied. However, Plaintiff's dashed hopes and bruised ego does not turn a denial of a transfer into an actionable adverse employment action, especially where, as here, there was no decrease in wage or salary or any loss of benefits as a result of being denied the transfer. *Williams,* 368 F.3d at 128 ("subjective, personal disappointments do not meet the objective indicia of an adverse employment action"); *See also Garber v. New York City Police Dept.,* 95-CV-2516, 1997 WL 525396 (S.D.N.Y. August 22, 1997) *aff'd* 159 F.3d 1346 (2d Cir. 1998) (unpublished decision); *Harrison v. New York City Off-Track Betting Corp.*, 99-CV-6075, 2001 WL 1154691, at *3 (S.D.N.Y. Sept. 28, 2001) ("subjective dissatisfaction with assignments does not constitute adverse employment action").

Beyer's most serious claim is that the denial of the transfer curtailed her opportunities for advancement within the Police Department. *See De La Cruz v. New York City Human Res. Admin. Dept. of Soc. Serv,* 82 F.3d 123 (2nd Cir. 1996) (a transfer to a less prestigious unit that curtailed plaintiff's professional development held to be an adverse employment action); *Pimentel,* 2002 WL 977535, at *4* (finding that a change in opportunities for advancement may constitute an adverse employment action). As evidence that she has been denied opportunities for career advancement, plaintiff points to the fact that her current precinct detective position is not scientific, and that she has not been inside a laboratory for a number of years. Beyer Aff. ¶¶21, 22. Therefore, she does

---

[1] Beyer dates the outsourcing of Serology's DNA work to "1989 or 1990," which is 10 years before she requested a transfer to LFS. Beyer Aff. ¶9. The defendants claim that the outsourcing of DNA work occurred in 1992. Tully Aff. ¶6. The defendants also state that the decision to close Serology was made in the Fall of 2002. Tully Aff. ¶5. Beyer does not provide the date of the rumors and discussions that lead her to assume that Serology would be closed. None of these discrepancies create material issues of fact for trial.

"not believe that any law enforcement agency would ever select me for employment as a forensic scientist." *Id.* On this point, plaintiff has played a bit of shell game with the evidence. The denial of plaintiff's request to transfer from Serology to LFS is the adverse employment action claimed. However, by staying in Serology, plaintiff presumably would have remained a forensic scientist. Therefore, the lack of opportunities to advance her career had nothing to do with denial of her request to *transfer out* of Serology. In the end, Beyer was transferred out of Serology because it closed. However, the closing of Serology and her transfer to a precinct level detective squad is not the adverse employment action alleged. It is important to note that aside from the rumors and discussions noted earlier, there is no evidence that the Police Department planned to close Serology at the time that plaintiff's requests to transfer were denied.[2] Moreover, it is undisputed that "the only way for a detective to increase her base salary or obtain a promotion in the Nassau County Police Department is through a civil service test for promotion to sergeant." Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ¶9.

Finally, plaintiff claims that MJ Lindsay erroneously found that the denial of her request to be transferred to LFS was not an adverse employment action because her skills made her "materially best suited in the LFS." Plaintiff's Memo at 17. The court has searched the record for evidence to support plaintiff's claim, and cannot find anything more than plaintiff's conclusory statements.

---

[2] In her affidavit in support of her objections to the R&R, plaintiff points to contract negotiations between the Detective Association and the Police Department. Aff. in Support ¶4. According to Beyer, in 1999 the Police Department and the Detective Association signed a memorandum agreement that would have allowed the Police Department to cut 10 detective positions, including those in Serology. *Id.* Plaintiff was aware of the agreement but there is no evidence that the detective positions in Serology were any more vulnerable than other detective positions. This evidence does not demonstrate that the department knew that Serology would be closed at the time that Beyer's transfer requests were denied.

According to Exhibit D to Carl Sandel's Declaration in Support of Defendants' Motion for Summary Judgement, a position in Serology required a bachelor's degree in biology, chemistry, forensic science or criminology, excellent communication skills, "[p]rofessional appearance and bearing" and "excellent prior work record and supervisory recommendations re: attitude, initiative, cooperation and teamwork." *Id.* To obtain a position in LFS, in contrast, the applicant must only possess a "strong interest in fingerprint science," and "[i]nterest in acquiring the computer skills necessary to operate computerized latent finger printing systems." *Id.* It is undisputed that Beyer was the only member of the Police Department with a masters degree in forensic science and that Beyer had positive recommendations. Accordingly, Beyer's skills were commiserate with both Serology and LFS. Although the court is required to make every inference in favor of the non-moving party, the court would be remiss not to note that the evidence demonstrates that Beyer was more qualified for Serology, although she also maintained the lesser qualifications necessary for LFS.[3] However, there is nothing in the record that indicates that Beyer's skills were more suited to LFS than to Serology.

2.  Denial of Training

Plaintiff alleges that the denial of her requests to attend training courses constitutes an adverse employment action because it "adversely affected her ability to learn the latest developments in her field, adversely affecting her professional capacity as a scientist and police detective." Plaintiff's Memo 19. MJ Lindsay rejected this claim finding that "Beyer has not produced any evidence to indicate that she was required to attend training sessions or that the training sessions

---

[3] Beyer also points out that she was qualified to work in LFS because "the latent fingerprint training I had received in graduate school was still current." Beyer Aff. ¶14. Such an assertion does nothing to demonstrate that her skills were better suited to LFS than Serology.

9

would affect her ability for advancement or promotion." R&R 11. I concur.[4]

Denial of training is an adverse employment action where it materially affects a plaintiff's working conditions and prospect for promotion. *See Brennan v. City of White Plains,* 67 F.Supp.2d 362, 374 (S.D.N.Y.1999) (finding that plaintiff's exclusion from meetings was not an adverse employment action when it was not shown that it affected her working conditions); *Copeland v.. Sears, Roebuck & Co.*, 25 F.Supp.2d 412, 417 (S.D.N.Y.1998) (holding that an employer's failure to provide training was not an adverse employment action when training would not qualify plaintiff for promotion or lead to wage increase). The record is devoid of any evidence from which a jury could conclude that Beyer's working conditions or prospects for promotion were affected by the denial of training. Beyer only makes the conclusory statement that she "became obsolete as a forensic scientist" due to the lack of training. Beyer Aff. ¶11. However, plaintiff offers no evidentiary support for this conclusion.[5] Even viewing all the evidence in the light most favorable to plaintiff, such a conclusory statement cannot defeat defendants' motion for summary judgement.

3.   Totality of the Circumstances

Plaintiff further objects to MJ Lindsay's recommendation that summary judgement be

---

[4] The court further concurs with MJ Lindsay's decision to permit defendants to amend their answer to assert a statute of limitations defense to any Title VII violation occurring more than 300 days before Beyer filed her EEOC complaint and, with respect to any cause of action under §1983 and the New York State Human Rights Law, to assert a statute of limitations defense to any cause of action that occurred more than three years before this action was filed. Therefore, those claims are deemed time barred.

[5] According to plaintiff, the denial of training made her "unfamiliar with the latest techniques being used by the department's outside laboratories." Beyer Aff. ¶11. However, there is no evidence in the record that a detective in Serology was required to be familiar with the work of outside laboratories or that Beyer's lack of knowledge affected her working conditions or prospects for promotion.

granted, asserting that "there are issues of fact regarding whether the totality of the circumstances amounts to an atmosphere of adverse action." Plaintiff's Memo 22. In support, Plaintiff cites two cases, *Phillips v. Bowen,* 278 F.3d 103 (2d Cir. 2002) and *Wallace v. Suffolk County Police Dept.,* 396 F.Supp.2d 251 (E.D.N.Y. 2005), both First Amendment retaliation claims. There are subtle but important differences between employment actions which are in retaliation for constitutionally protected speech and employment actions which violate Title VII. In the First Amendment context, courts examine whether an employment action was intended to have a "chilling affect" on an employee in retaliation for the employee's exercise of his/her First Amendment rights. However, in the Title VII context, the court looks to whether the employment action was done so as to impermissibly discriminate against the employee in violation of Title VII. As one court noted:

> a transfer that might not qualify as an adverse employment action under Title VII because the employee would receive the same pay, perform the same duties, and so forth, might be an employment decision which is impermissible if substantially motivated by the plaintiff's First Amendment protected activity, as a reasonable person in the circumstances could comprehend the transfer as a punishment for protected speech or an attempt to "chill" that speech by moving the individual from a position in which that speech would be pertinent.

*Bevill v. UAB Walker College*, 62 F.Supp.2d 1259, 1297, fn 33 (N.D. Al. 1999). Therefore, while a plaintiff in a First Amendment retaliation claim may compound several relatively minor employment actions to demonstrate their chilling affect, a Title VII plaintiff must demonstrate at least one adverse employment action that materially and detrimentally altered the terms, conditions or privileges of employment. If there is no single adverse employment action, a Title VII plaintiff cannot establish a prima facia case. Beyer has failed to establish that any of the actions taken by the defendants were adverse, and therefore there has been no Title VII violation.

4.  §1983 and New York State Human Right Claims

Because defendants' did not brief the issue of whether the denial of plaintiff's transfer requests violates either §1983 or the N.Y.S.H.R.L., MJ Lindsay did not decide these issues. However, in their "Objections to August 3, 2006 Report and Recommendations" defendants note that the same standard applies for claims asserted under Title VII, 42 USC §1983 and the N.Y.S.H.R.L. Therefore, where Title VII is not violated, neither is §1983 or the N.Y.S.H.R.L. Defendants are correct and plaintiff's claims under 42 USC §1983 and the N.Y.S.H.R.L. are dismissed. *See Demoret v. Zegarelli,* 451 F.3d 140 (2d Cir. 2006) (finding that the standards for deciding claims brought under the N.Y.S.H.R.L. are the same as for Title VII); *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)("the elements of [§1983] are generally the same as the elements of [Title VII] and the two must stand or fall together").

**Conclusion**

After a *de novo* review of those portions of the R&R to which Beyer and the defendants object, the court adopts MJ Lindsay's R&R but modifies it to the extent that the court sustains defendants' objections to MJ Lindsay's R&R and hereby dismisses plaintiff's N.Y.S.H.R.L. and §1983 claims. Defendants' motion for summary judgment is granted in its entirety and this matter is dismissed without costs to either party.

SO ORDERED.

DATED:   Brooklyn, New York
         September 25, 2006

                                           _____/S/_____
                                           DORA L. IRIZARRY
                                           United States District Judge